CHICAGO, BURLINGTON AND QUINCY RAILROAD COMPANY

*v.*

ARTHUR A. WEBER, Admr.

*Opinion filed December 20, 1905.*

1. EVIDENCE—*papers rendered admissible by section 15 of Evidence act are original evidence.* Under section 15 of the Evidence act, providing that the papers, entries and records of any corporation may be proved by a copy thereof, certified under the hand of the secretary, clerk, cashier or other keeper of same, to which the seal of the corporation, if it has one, shall be affixed, the papers, etc., therein mentioned are original and not secondary evidence.

2. SAME—*certified copy of lease of railroad lines is admissible under section 15 of the Evidence act.* A copy of a lease of its lines by a railroad corporation, certified by the proper officer and bear-

ing the seal of the corporation, is admissible as a "paper" of the corporation, within the meaning of that term as used in section 15 of the Evidence act. (*C., W. & V. Coal Co.* v. *Moran*, 210 Ill. 9, distinguished.)

3. Same—*when question as to whether defendant was operating railroad at time of injury is one of law.* In an action for personal injury against a railroad company, where the only evidence tending to contradict the defendant's proof that it had leased its lines prior to the time of the injury is a folder issued after that time on which the defendant's name is stamped, which the evidence shows was not issued by the defendant nor authorized by it but was issued by the lessee company, which was not a party to the suit, the question whether defendant was operating the road at the time of the injury is one of law for the court.

4. Railroads—*servants of lessee are not servants of lessor for purpose of service of process.* The fact that a lessor railroad is liable for the negligence of the lessee railroad and its servants in operating the railroad, does not render the lessee, and its servants, servants of the' lessor railroad for the purpose of accepting service of process, and service of process on an agent of the lessee is not a legal service upon the lessor.

Magruder, J., dissenting.

Appeal, from the Appellate Court for the Third District;—heard in that court on appeal from the Circuit Court of Adams county; the Hon. A. Akers, Judge, presiding.

On September 29, 1903, appellee, as the administrator of the estate of Frederick Weber, sued appellant in an action on the case for an injury resulting in the death of his decedent by such decedent being struck by a locomotive and train of cars on appellant's railroad near Quincy, at the crossing of a public highway. The declaration counts directly upon the negligence of appellant and its servants. The summons bears the date of bringing the suit, and the sheriff's return thereon was in words following: "Not being able to find the president of the within named the Chicago, Burlington and Quincy Railroad Company, I have served the within summons on the within named the Chicago, Burlington and Quincy Railroad Company by reading the same and deliv-

ering to E. F. Bradford, agent of the said Chicago, Burlington and Quincy Railroad Company, a true copy of the within, this second day of October, 1903." .

Appellant is incorporated under the laws of the State of Illinois as the Chicago, Burlington and Quincy Railroad Company, and will be hereafter referred to as the railroad company. There is also a corporation incorporated under the laws of the State of Iowa and doing business in this State under the name of Chicago, Burlington and Quincy Railway Company, which will be hereinafter referred to as the railway company.

The defendant (appellant) filed its duly verified plea in abatement, averring that at the time of the serving of said summons upon the defendant the said Bradford was not the agent at Quincy or elsewhere, and prayed that the writ be quashed. Appellee replied, tendering issue upon the above plea, and upon a trial by a jury the issue was found for the plaintiff and his damages were assessed at $6000, and the court, after overruling a motion for a new trial, entered judgment upon the verdict. Appellant prosecuted an appeal to the Appellate Court for the Third District, where the judgment below was affirmed, the Appellate Court requiring a *remittitur* of $2000, and appellant prosecutes this appeal.

Under the plea in abatement three witnesses testified for appellant that they were acquainted with both the railroad and railway companies. E. F. Bradford, upon whom the summons was served, testified that he was the general agent in the traffic department for certain territory in Illinois of the railway company; that he had been the agent from about 1887 to December, 1901, of the railroad company, which up to the latter date had operated the railroad upon which the appellee's decedent was alleged to have been injured; that on December 21, 1901, the railroad changed hands, and that from that time to the time of said trial the railway company had operated said railroad; that said latter company, from the date last aforesaid, controlled all trains running on said

road, employed, paid and discharged all employees, and that all remittances of money, as the receipts for business of said railroad, were made to said railway company, and that on October 2, 1903, when the summons in this case was served on him, he was not the agent of the railroad company. The witness produced, and there was offered in evidence without objection, a circular letter marked No. 1, dated December 16, 1901, and received by him December 21, 1901, signed by the president of the railway company, notifying the witness, as an agent and employee of the railroad company, that the railway company, as lessee, had taken over and would operate the properties owned and otherwise controlled by the railroad company, and that upon receipt of that letter he proceeded at once to change the stationery, bill-heads, and everything of that kind, by using a stamp and stamping them to read "railway" where the word "railroad" appeared, so as to read "The Chicago, Burlington and Quincy Railway Company," under instructions received so to do from said railway company until new supplies were furnished. The witness further testified that since December 21, 1901, the railroad company had no office in Quincy nor had it any agent there, and that from the date of the receipt of the circular No. 1 he had acted as the agent of the railway company, and not the agent of the railroad company.

Appellant also introduced Alvin C. Anders, the freight agent of the railway company at Quincy, who testified that before the change in the companies he was the freight agent of the railroad company, but that in December, 1901, he received notice of the change of companies, and from that time on acted as the agent of the railway company, and that from that time on, and at the time of the injury complained of, and at the time of bringing the suit in question and service of the summons, the railroad was being operated by the railway company; that he stamped the way-bills and other blanks and stationery in his office in December, 1901, so as to read "railway company" instead of "railroad company,"

and that the railroad company had no agent at Quincy after December, 1901; that he was paid by the railway company and remitted all the money to it. In fact, his testimony was substantially like that of the witness Bradford, and need not be further adverted to.

Alfred S. Ellis, the ticket agent for the railway company at Quincy, testified that he had known the railroad for twenty years, during all of which time he had acted as ticket agent; that he acted for the railroad company up to December, 1901, and for the railway company from that time to the time of giving his testimony. He testified with reference to the notification of change and receiving a stamp to change the tickets by the use of the stamp so as to read "railway company," that from December, 1901, to the time of testifying he was paid by the railway company for his services and made all remittances of money to the railway company, and other details upon the same line, and as fully as did the witness Bradford. All three of the witnesses testified that the railroad company had no agent or office in Quincy at any time after December, 1901, and that the railroad company had an office in Chicago from December, 1901, to the time of testifying, where George B. Harris, the president of the railroad company, had his headquarters and could be found.

Appellant also offered, and there was admitted in evidence over the objection of appellee, what purported to be a certified copy of a lease from the railroad company to the railway company of all the railroad company's lines in the State of Illinois and other States, which purported to run from November 20, 1901, for a period of ninety-nine years, which said supposed copy of the lease was duly certified by T. S. Howland, secretary of the Chicago, Burlington and Quincy Railroad Company, and affixed thereto was the corporate seal of said company.

The only evidence offered by appellee as tending to dispute or contradict the evidence of these witnesses was a folder of the "Burlington Route" bearing date October 4,

1903.  It was such a folder as is usually found in stations and hotels, advertising the road, containing a map and list of the stations, officers and time-cards for the various divisions of the road in this and other States.   On the margin of the first page of this folder was stamped in very small letters, with red ink, "Chicago, Burlington and Quincy Railroad Company, owner," and in the list of officers as representing the Burlington route was "W. A. Lalor, assistant general passenger agent C. B. & Q. R. R., Chicago, Ill."   On page 11 there was a notification in regard to the redemption of tickets, in which it was said that they would be redeemed by presentation at the offices of the "C. B. & Q. R. R., Chicago, and B. & M. R. R., Omaha."   On page 19 was a time-card of the Galesburg and Quincy route, which bore the heading "Chicago, Burlington & Quincy R. R."   On page 15 appeared the time-cards of the Aurora, Ottawa and Streator division and of other divisions, and was originally headed "C. B. & Q. R. R."   Where the letters "R. R." were originally printed were three or four stamps, in red letters, of the words "railway" and "railway company."   Appellee proved by witness Bradford that this folder was a regular monthly folder issued by the Chicago, Burlington and Quincy Railway Company, and that the railroad company had nothing to do with it.

At the close of all the evidence counsel for appellant, limiting their appearance for that purpose, moved the court to direct the jury to find a verdict for it, which motion was denied.

Among other instructions given at the request of appellee was the following:

2. "If the jury find, from the evidence herein, that the defendant, the Chicago, Burlington and Quincy Railroad Company, was the owner of and operating a railroad known as the Chicago, Burlington and Quincy railroad for many years immediately before December 21, 1901, and that at about the date last aforesaid the said railroad company, as

lessor, leased its railroad, and the operation thereof, to the Chicago, Burlington and Quincy Railway Company as lessee, and that continuously thereafter to the present time said lessee, by its servants and agents, had the exclusive management and control of said railroad and its operation, then the agents and servants of any such lessee would be the agents and servants of this defendant for the purpose of service of summons in this case."

Appellee assigns as cross-error the admission of the copy of the lease.

Joseph N. Carter, and Matthew F. Carrott, (Chester M. Dawes, of counsel,) for appellant:

Where the statute prescribes a mode of service of summons on the defendant in order to bring him into court, that mode must be followed to obtain jurisdiction of the person where he does not voluntarily appear. *Mining Co.* v. *Schirmer,* 64 Ill. 106; *Coal Co.* v. *Coal Co.* 111 id. 32.

In suits against a corporation, where the statute designates particular persons or classes of persons on whom the process of summons may be served, the service must be had upon one of such specified persons, else the corporation will not be bound by such service. *Hinman* v. *Opera Co.* 49 Ill. App. 135; *Mining Co.* v. *Schirmer,* 64 Ill. 106; 22 Am. & Eng. Ency. of Law, (1st ed.) 116.

It is not sufficient that the person served with summons had been the agent of the defendant corporation, but he must have been such agent at the time of the service of the writ in order to bind the corporation. *Stock Exchange* v. *Keyes,* 67 Ill. App. 461; *Combs* v. *Oil Co.* 58 Ill. App. 123; *Winney* v. *Sandwich Manf. Co.* 86 Iowa, 608.

Nor is service on an agent of an agent sufficient. *Railroad Co.* v. *Miller,* 87 Ill. 45.

There being no evidence fairly tending to prove that Bradford, at the time of service of the summons, was an agent of the appellant company, the trial court should have

directed a verdict for the defendant and should have given the instruction to that effect, as requested by the defendant. *Rack* v. *Railway Co.* 173 Ill. 289; *Railroad Co.* v. *O'Conner,* 115 id. 254; *Frazer* v. *Howe,* 106 id. 563; *Woodman* v. *Bank,* 211 id. 578; *Bartelott* v. *Bank,* 119 id. 259; *Railway Co.* v. *Meixner,* 160 id. 320.

Vandeventer & Woods, for appellee:

The controverted questions of fact as to whether there was a lease from the appellant to the Chicago, Burlington and Quincy Railway Company and whether the process was served upon an agent of appellant, are and have been conclusively settled against the appellant and cannot be re-opened or questioned in this court. *Darlington* v. *Chamberlin,* 120 Ill. 585; *LaSalle County* v. *Milligan,* 143 id. 324; *Railway Co.* v. *Mead,* 206 id. 175; *Casner* v. *Preston,* 109 id. 531; *Cramer* v. *Burkhalter,* 207 id. 34; *Paper Co.* v. *Bank,* 129 id. 296; *Railroad Co.* v. *Flaherty,* 202 id. 151; *Thompson* v. *Duff,* 119 id. 226; *Powell* v. *McCord,* 121 id. 330.

Where an issue of fact on a plea in abatement is made by a corporation denying the agency of the person served with process, as in this case, and such issue is submitted to a jury, the effect is that the defendant admits the merits of the plaintiff's demand, and if that issue of fact in abatement is decided for the plaintiff, the jury, by the same verdict, should assess the plaintiff's damages; and hence it was proper to allow plaintiff in this case to submit to the jury the evidence necessary to enable them to assess such damages if they found the issue in abatement for the plaintiff. *Agricultural Colony* v. *Pease,* 194 Ill. 100; *Shoe Co.* v. *Lewis & Co.* 191 id. 155.

The public may look for indemnity for injuries resulting from the wrongful or unlawful operation of the road to that corporation to which they have granted the franchise and thus delegated a portion of the public service; and for this purpose the company whom it permits to use its tracks, and its servants and employees, will be regarded as the servants

and agents of the owner company. *Railway Co.* v. *Hart,* 209 Ill. 420; *Pennsylvania Co.* v. *Ellett,* 132 id. 660; *Railroad Co.* v. *Mayes,* 49 Ga. 355; *Singleton* v. *Railroad Co.* 70 id. 464.

The circuit court committed a fatal error in admitting the copy of a pretended lease in evidence from the appellant to the Chicago, Burlington and Quincy Railway Company over and against the objection of the appellee, without accounting or attempting to account for the non-production of the original. *Coal Co.* v. *Moran,* 210 Ill. 9.

A lease is a contract between private parties. Taylor on Landlord and Tenant, (6th ed.) sec. 14; 1 Washburn on Real Prop. (2d ed.) sec. 3, p. 287; 4 Kent's Com. (9th ed.) p. 95.

There being no legal evidence in the case or record showing the Chicago, Burlington and Quincy Railway Company to be the lessee of appellant, its employees and servants, in operating the railroad, became and were the agents and servants of the appellant, the Chicago, Burlington and Quincy Railroad Company. *Hays* v. *Railroad Co.* 61 Ill. 422; *Railroad Co.* v. *Black,* 79 id. 262; *Railway Co.* v. *Hart,* 209 id. 420; 23 Am. & Eng. Ency. of Law, (2d ed.) 777, 778.

Mr. JUSTICE RICKS delivered the opinion of the court:

Many errors are assigned by appellant and argued by its counsel, but as we view the case it is unnecessary for a proper disposition of it to consider but two matters urged by the appellant. The controlling and important questions, as we think, arise from the refusal of the court to give the peremptory instruction directing a verdict for appellant, and the giving by the court of instruction No. 2 given at the request of appellee. Preliminary to the consideration of these questions we should, perhaps, consider the cross-error assigned by appellee upon the admission by the trial court of the certified copy of the lease from appellant to the railway company.

Appellee states that the admission of this evidence was error, and cites and relies upon *Chicago, Wilmington and Vermilion Coal Co.* v. *Moran,* 210 Ill. 9. We have examined that case and find that it contains a construction of section 18 of the statute in regard to evidence and depositions. (Hurd's Stat. 1903, p. 937.) Section 14 of that chapter relates to the admission of papers and records, etc., of cities and villages. Section 16 is as to the form of the certificate. Section 17 relates to the manner of certifying the records of justices of the peace, and section 18, which was considered in the case cited, reads: "Any such papers, entries, records and ordinances may be proved by copies examined and sworn to by credible witnesses." The language of section 16 is peculiar, and states that the certificate of the clerk of a court or village, city or town, shall certify that he is the keeper thereof, and if there is no seal shall so state. All the sections of that act from 10 to 18, inclusive, except section 15, which will be hereafter noticed, were part of an act appearing in the revision of 1845, and when the language of section 16 is considered, that "if there is no seal" the clerk "shall so state," the meaning and purpose of section 16 are made quite apparent. Section 15 was not passed until 1853, and was no part of the act at the time that sections 16 and 18 were passed. Section 15 reads: "The papers, entries and records of any corporation or incorporated association may be proved by a copy thereof, certified under the hand of the secretary, clerk, cashier or other keeper of the same. If the corporation or incorporated association has a seal the same shall be affixed to such certificate." This section was doubtless placed by the revisers or editors of the statutes as section 15 of the act for the purpose of giving effect to section 18 in a case where the corporation had no seal. The language of section 15 is clear, unambiguous and direct, and if effect is to be given to it, the only inquiry that can arise under it is as to what is meant by the language "the papers, entries and records" of such corporation or association.

No reason has been suggested why section 15 should not be given effect, other than that in the case cited by appellee it is held that a contract between a certain miners' union and a certain coal company was not properly admitted in evidence by merely proving a copy thereof by the testimony of a credible witness. In that case it appears that no proof was made that the corporation or association had no seal, nor was there any certificate to that effect, as required by section 16 of the act. We think the case relied upon has no application to the question before us, as in the case at bar the copy is certified by the proper officer, and in compliance with the statute the seal of the corporation is affixed to the certificate. This section of the statute was considered by this court in *Mandel* v. *Swan Land Co.* 154 Ill. 177, and it was there held that by virtue of it the papers, etc., that were admissible under its provisions are original and not secondary evidence.

It remains, then, to determine whether the lease is such a paper as is contemplated by the language of said section 15. Whether that section applies to all papers, such as contracts between a company and its employees, or for materials, or other ordinary matters between it and third persons, need not be and is not now considered or decided.

The lease in question is a most important paper in the business of the appellant corporation. It evidences the leasing by it to the railway company of over five thousand miles of railroad, traversing a number of States, with the stations, yards, side-tracks, shops, equipment of engines, cars, machinery, tools, furniture and franchises, except its franchise to be a corporation, for a period of practically a century. That the preservation of such an instrument is of first importance to appellant can be neither doubted nor questioned. The courts must also take knowledge of the fact that under the laws of this State appellant, as lessor, does not escape the risk of frequent litigation arising from the operation of the road by its lessee, and that it would be most

hazardous if it were possible that the original instrument be produced at each trial and introduced in evidence, and held by the court or some competent officer until a record should be made, and perhaps by order of the court certified to courts of appeal. We cannot be unmindful of the fact that there may be a number of suits pending against appellant and for hearing at the same time in different courts, in which case it would be practically impossible, if not totally so, to have the same instrument in various courts at the same time and to be used as evidence. These considerations doubtless appealed to the legislature in enacting the law, and as no reason has been suggested and none suggests itself to our minds why the statute in question may not and should not be given full effect, we are disposed to give it effect, and to hold that the lease in question is such an instrument as is contemplated by the provision of the statute, and that the court did not err in the admission of the copy so certified as evidence.

Appellee urges that this evidence is incompetent and that this court should so hold, and that if it does so hold there is no competent evidence in the record to support the plea in abatement, as it is said by appellee that the only legal evidence of the leasing of the railroad by appellant to the railway company is a written lease, and that no such lease was in evidence. If the question were as to the contents of the lease or its provisions, and as between the parties to it, the position taken by appellee would certainly be sound. But such is not the situation, as we view it. The terms and conditions of the lease were not material or controlling. The fact that the railroad was being operated, at the time of the injury complained of, by a railroad company other than the appellant was the material question that arose under that plea, and it would seem clear that anybody having knowledge and who was familiar with the railroad corporations, and who knew that up to a given time one of them operated the road and after that time the other operated it, could testify, and the evidence would be competent and material. Three

witnesses did testify, and they show by their testimony that they had absolute knowledge, as they were employees originally of the appellant company and from 1901 were employees of the railway company, and their business and duties were of such a character and their relation to the two companies such that they could not be mistaken upon the fact as to who was actually operating the railroad.

Appellee strenuously insists that the questions of fact as to what company was operating the railroad at the time of the injury is foreclosed by the finding of the jury and the judgment of the Appellate Court. Under the request to direct the jury to find a verdict for appellant a question of law, and not a question of fact, arose, and that question of law is preserved and open to our consideration. If there is evidence in the record which, taken as true, together with all the reasonable legal inferences that may arise therefrom, tends to support the position of appellee that the railroad was being operated by appellant and not by the railway company, or if, under the law, although the railway company may have been operating the railroad, service upon the agent of the railway company was legal service as to the railroad company, then the trial court was warranted in refusing the instructions as asked, otherwise not. As is pointed out in the statement of the case, the only evidence tending to show that the railroad company was operating the railroad at the time of the injury was the folder offered by appellee; but in offering that evidence appellee inquired of the witness Bradford, and elicited from him the statement that that circular or folder was issued by the railway company and not by the railroad company. Furthermore, it is not shown that the railroad company had at any time such a stamp as that which was impressed on the first page of the folder, or that it was placed there by any person in authority of the railroad company. In the absence of such proof, and with the proof called forth by appellee clearly showing that the folder was not a folder issued by appellant but by the railway com-

pany, it, with any inference that could be drawn from it, amounted to a mere scintilla of evidence at the very most. It went to the jury and to the court absolutely discredited and absolutely shown not to be the document or act of appellant, but that of another company not a party to the suit. It did not amount to any legal evidence, or was not such evidence as comes within the requirement that it shall be such evidence as, with all the reasonable inferences that shall be drawn from it, fairly tends to support the contention of the party relying upon it, so that unless service upon the servants of the railway company can be held to be service upon appellant the instruction should have been given.

Since 1855 the statute of this State has permitted railroad companies organized under the laws of this State to lease their railroads to corporations organized in this and other States. (Hurd's Stat. 1903, chap. 114, par. 44.) But, following what seemed to this court to be a sound doctrine, we have uniformly held that a railway company cannot absolve itself from the performance of duties imposed upon it by its charter or any general law of the State, or relieve itself from liability for the wrongful acts or omission of duties of persons operating its road, by transferring its corporate powers to other parties or by leasing its road to them; and so we held in *Balsley* v. *St. Louis, Alton and Terre Haute Railroad Co.* 119 Ill. 68, that the lessor company was liable for the destruction of property by fire caused by neglect upon the part of the lessee company to keep its track and right of way clear and free from dead grass and dry weeds, etc.; and in *Pennsylvania Co.* v. *Ellett,* 132 Ill. 654, it was held that the lessor company was liable for the death of one caused by the negligence of the operating company. · It is there said (p. 659) : "The law has become settled in this State by an unbroken line of decisions, that the grant of a franchise giving the right to build, own and operate a railway, carries with it the duty to so use the property and manage and control the railroad as to do no unnecessary

damage to the person or property of others, and where injury results from the negligent or unlawful operation of a railroad, whether by the corporation to which the franchise · is granted or by another corporation, or by individuals whom the owner authorizes or permits to use its tracks, the company owning the railway and franchise will be liable." In the more recent case of *Chicago and Grand Trunk Railway Co.* v. *Hart,* 209 Ill. 414, we held that the lessor company was liable to the servants of the lessee company for injuries received by the breaking of a worn or defective axle or journal on a switch engine upon which such servant was employed. Among other things it is there said (p. 417) : "While the duty which rests upon the lessor companies to operate their roads is an obligation which they owe to the public, the permission given by the legislature, as the representative of the public, to perform that duty through lessees has no effect to absolve such companies from the duty of seeing that the lessee company provides and maintains safe engines and cars, and that the employees of the lessee companies to whom is entrusted the operation of their roads are competent and that they perform the duties devolving upon them with ordinary care and skill, for upon the character and condition of safety of such engines and cars and on the competency and care of such employees depend the lives and property of the general public. As a matter of public policy such lessor companies are to be charged with the duty of seeing that the operation of the road is committed to competent and careful hands." The doctrine that a railroad company cannot escape liability for injuries resulting from negligence by leasing their roads or permitting other companies or persons to operate the same is neither new nor modern, but was early announced in *Lesher* v. *Wabash Navigation Co.* 14 Ill. 85.

The cases above cited, and many more announcing the same principle, are cited by appellee, and his insistence is, as we understand it, that inasmuch as the law is that the lessor

company is liable for the negligence of the lessee company, therefore the lessee company is, in law, the agent and servant of the lessor company, and being such agent or servant, service upon the lessee company is a compliance with the law in regard to the service of process in such cases; and if we understand counsel for appellee correctly, their contention goes further, and to the extent that the agent and servants of the lessee company are the agents and servants of the lessor company as to the public and third parties. As applied to the question of liability for negligence, and confined exclusively to that question, it is doubtless true that this court has gone so far as to say that the public and third persons may look to the corporation to which a franchise has been granted, and that for that purpose a company which such original company permits to use its tracks, and likewise the servants and employees of such lessee company, will be regarded as the servants and agents of the owner. The doctrine of agency and liability has not been carried beyond that class of actions arising from the negligence or willful failure to perform a duty springing from the chartered powers and owing to the public. It has not gone to the extent of liabilities arising from contracts, or even the torts of the lessee company, if they are not made or committed in the discharge of and in connection with the public duty arising from an obligation springing from the chartered privileges or chartered powers of said company. (*Anderson* v. *West Chicago Street Railroad Co.* 200 Ill. 329.) The fact that the lessee company and its servants and agents may, as a matter of public policy, be held the servants and agents of the lessor company in actions for negligence arising in the exercise of the chartered powers of the lessor company, does not also require or authorize the holding that such servants and agents, for the purpose of liability, shall also be held as the servants and agents of the lessor company for other purposes. It would hardly be contended that if the lessee company makes purchases of sup-

plies, machinery, rolling stock, or the many other things necessary in the operation of a railroad, the lessor would be liable therefor upon any principle of agency or upon the principle of agency declared in the cases above cited and quoted from. Nor would the lessor company be liable in an action of tort, in replevin or trover for the unlawful taking or holding of property by the lessee company or its agents. The question of liability of the principal for acts that it cannot delegate to others is a question wholly distinct from the question of agency. The statute regulating the practice and procedure in courts of record provides that "an incorporated company may be served with process by leaving a copy thereof with its president, if he can be found in the county in which the suit is brought; if he shall not be found in the county, then by leaving a copy of the process with any clerk, secretary, superintendent, general agent, cashier, principal, director, engineer, conductor station agent or any agent of said company found in the county, and in case the proper officer shall make return upon such process that he cannot in his county find any clerk, secretary, superintendent, general agent, cashier, principal, director, engineer, conductor, station agent or any other agent of said company then such company may be notified by publication and mail in like manner and with like effect, as is provided in sections twelve (12) and thirteen (13) of an act entitled 'An act to regulate the practice in courts of chancery,' approved March 15, 1872." E. F. Bradford, upon whom service was attempted to be or was made as the supposed agent of appellant, testified, and was supported by two other witnesses, the evidence of each of whom was uncontradicted, that at the time of said service he was not the agent or servant of appellant and had not been since 1901,—almost two years prior to the time of service. He was the agent of the railway company. He was not acting for appellant, was not employed by it, was not paid by it and received no directions from it. It had no control over him. He made no

reports to it and it could not discharge or relieve him from his position. He owed it no duty, and could not, except in a sense of liability for negligence in the discharge of its chartered powers, be regarded in any manner as the agent of appellant. As a servant or agent he would owe a duty to his principal, and if served with process in actions against his principal his duty naturally would be to forward the copy to his principal or advise his principal of the service thereof, and upon his failure to do so his principal would have the remedy to discharge him, while appellant would have no remedy. Bradford owed no such duty to appellant, but was interested in the welfare of the railway company of which he was a servant, and if he consulted the interests of his principal he might well conclude that he subserved them by silence as to such service. The lessor and lessee are alike responsible for the actions of negligence of the servants of the lessee, and if the rule contended for is sound, an action may be brought against both and service had upon the agent of the lessee, who owes no duty to advise the lessor of the bringing of such suit or the service upon him of the process, and whose interest lies with the lessee, and the interests of the latter may be that judgment shall go against the lessor, so that a judgment by default may go against the lessor without any knowledge that it has been sued. Of course, this could make no difference if the person served was in fact the agent or any one of the persons named in the statute upon whom service might be made, as the courts do not inquire into the discharge of the duty of the agent to his principal, as that is a matter between them; and if the service is good, in the absence of an appearance the court will enter a default, and such default will stand whether the principal received notice of the service or not. This and many other situations clearly not contemplated by law could readily arise which should make the process of courts a mere pretense, and for all practical purposes the defendant had as well be served by notice of publication in a

newspaper in some foreign country as to assume a service such as is here contended for. The language of the statute in this provision as to who may be served requires no nicety of construction. It is plain and simple and is to be given its ordinary meaning.

The question has arisen in other courts, and so far as we know there is but a single case in a court of review in all the States that in any reasonable degree sustains appellee's position. That case is *VanDresser* v. *Oregon Railroad and Navigation Co.* 48 Fed. Rep. 202. It bears little analogy to the case at bar, and if it were in point we would not be disposed to follow it, as it is contrary to the general rules of construction of statutes and the spirit of our law as we interpret it.

By section 1 of the Practice act railroad companies may be sued where the principal office is located or in any county through which the railroad runs, and by section 4 of the act, as we have already pointed out, service may be had in those counties where no agent or clerk or other person authorized by the statute to be served in such cases is kept, by publication in the same manner as in suits in chancery. The law, therefore, furnishes a remedy, and though it may not be the most satisfactory or convenient, we are not authorized to enter the field of legislation and add to the statute still a further provision for the benefit of those in the appellee's situation.

We think the service was not a valid or legal one, that the peremptory instruction directing a verdict for appellant should have been given, and that the court erred in giving the second instruction given at the request of appellee. The judgment is therefore reversed and the cause is remanded to the circuit court of Adams county for further proceedings in conformity with this opinion.      *Reversed and remanded.*

Mr. Justice Magruder, dissenting.