## HUCKABEE v. PULLMAN CO.

(District Court, S. D. Georgia, Albany Division. August 17, 1925.)

1. **Corporations ⊜662, 668(10)—Essentials of suit against foreign corporation as to doing business in state and agent for service thereon stated.**

The essentials for a suit against a foreign corporation are that it shall be engaged in business in the state, and under Civ. Code Ga. 1910, § 2258, that service be made upon an agent who represents the corporation in its business or by leaving the process at the place of transacting the usual and ordinary public business of such corporation.

2. **Principal and agent ⊜14(1)—Agency may exist without contract.**

It is not essential to an agency that there shall be an actual contract between the parties or that compensation should be paid or expected by the agent.

3. **Principal and agent ⊜14(1)—Relations between parties may create agency.**

If relations exist which will create an agency, it will be an agency, whether the parties understood it to be or not.

4. **Corporations ⊜668(10)—Agency of foreign corporation for purpose of service of process.**

By a contract between them, the Pullman Company agreed to furnish cars to be hauled over the lines of a Georgia railroad company, and the latter agreed to require its ticket agents to sell tickets for such cars without charge to the Pullman Company. Under that arrangement ticket agents of the railroad company sold tickets furnished to them by the Pullman Company and accounted therefor directly to that company from which they received instructions. Held that they were agents of the Pullman Company who represented it in its business and on whom service of process might legally be made in a suit against it, under Civ. Code Ga. 1910, § 2258.

5. **Corporations ⊜668(4)—Service of process against foreign corporation may be made on others than those designated by it.**

That a foreign corporation has designated certain persons as its agents for service in the state does not render invalid service of process against it on others, who are in fact its agents for that purpose under the provisions of the state statute.

6. **Corporations ⊜668(13)—Return of service on foreign corporation held insufficient.**

A return of service of process on a foreign corporation, by leaving a copy of the writ "at the office and place of doing business of said corporation," but which failed to state that it was "the place of transacting the usual and ordinary public business of such corporation," held insufficient under Civ. Code Ga. 1910, § 2258.

At Law. Action by Thad Huckabee against the Pullman Company. On plea in abatement and traverse to return of service. Overruled.

Pope & Bennet, of Albany, Ga., for plaintiff.

Dorsey, Howell & Heyman and Mark Bolding, all of Atlanta, Ga., for defendant.

BARRETT, District Judge. Huckabee brings suit against the Pullman Company in tort for an alleged assault by the porter of the latter while Huckabee was a passenger on its car in movement from Albany, Ga., to Atlanta, Ga. Challenge is made as to the validity of the service.

The facts are not in dispute. The issue is as to the conclusion to be drawn therefrom. Succinctly stated, they are as follows: At the time of the service there was in effect a contract between the Central of Georgia Railway Company and the Pullman Company, by which the latter was to furnish cars to be hauled by the former over its line of railway, and the railway covenanted that it would "require its ticket agents, at such offices as may be mutually agreed upon, to sell tickets for seats and berths in such cars without charge to the Pullman Company, the proceeds of such sales to be at the risk of the Pullman Company." Five railroads doing business at Albany, including the Central of Georgia Railway, organized the Albany Passenger Terminal Company; each of the railroads owning a proportionate part of the stock of such company. The Terminal Company employed a ticket agent, R. E. Davis, and a ticket seller, W. F. McClellan. Such agent and seller received no compensation from the Pullman Company and were not subject to discipline or discharge by it. The Pullman Company furnished them with blank tickets representing spaces on the pullman cars operated over the railroads, including the Central of Georgia Railway from Albany, Ga., to Atlanta, Ga., such tickets being furnished direct to Davis by the Pullman Company's representative in Chicago, on requisitions signed by Davis. Tickets thus furnished were sold by the said agent and seller. The said agent accounted directly to the Pullman Company and made remittances directly to the Pullman Com-

pany for all moneys received on its account. The acts of said agent were checked up twice a year by the traveling auditors of the various railroads. Said agent and seller used, as a part of their regular office equipment, a pamphlet book of instructions furnished by the Pullman Company as to how to handle its tickets and the diagrams of its cars and were furnished and used Pullman tariffs, the same being copies of the tariffs filed by the Pullman Company with the Interstate Commerce Commission. When the agent was in doubt as to the meaning of the instructions, or as to how he should act in reference to the affairs of the Pullman Company, he corresponded direct with the general passenger agent of the Pullman Company in Chicago, Ill. The Pullman ticket involved in this case was purchased by the plaintiff from the conductor of the pullman car on which he traveled. The said agent made no report of any of the Pullman Company business to either said Terminal Company or any of the railroads; the business and funds and reports of the Pullman Company being kept entirely separate and distinct from the business and funds and reports of the Terminal Company and railroads. All correspondence from the Pullman Company received by the said agent Davis was addressed to "Mr. R. E. Davis, D. T. A., Central of Ga. Ry., Terminal Station, Albany, Ga."

The Pullman Company did on the 21st day of January, 1924, through W. M. Camp, its agent, Atlanta, Ga., register with the Comptroller General under paragraph 49 of the General Tax Act of 1923,[1] in which it was set forth that, in addition to the said W. M. Camp, the agents of the Pullman Company in Georgia were G. F. Stavro, Augusta, Ga., and J. E. Breaux, Savannah, Ga.

The return of the sheriff was as follows: "I have this day served the defendant, the Pullman Company, a corporation, both by serving its agents, R. E. Davis and W. F. McClellan, in said county, with a copy of the within writ and process, each personally, and also by leaving a copy of said writ and process with the said R. E. Davis and the said W. F. McClellan, each at the office and place of doing business of said corporation, in said county."

The plaintiff contends that the service was good for two reasons, namely: (1) Because R. E. Davis and W. F. McClellan were agents of the Pullman Company; and (2) because the writ and process were left "at the office and place of doing business of said corporation, in said county."

[1] 1. The essentials for suit against a foreign corporation are that it shall be engaged in business in this state and that service must be upon an agent who represents the corporation in its business or, as to service, by leaving the writ or process "at the place of transacting the usual and ordinary public business of such corporation." Civil Code of Georgia 1910, § 2258; Peterson v. C., R. I. & P. Ry., 205 U. S. 364, 390, 27 S. Ct. 513, 51 L. Ed. 841.

It is undisputed that the Pullman Company was doing business in Georgia at the time of the alleged injury as well as at the time of the service and that Davis occupied to it the same relationship at both of said periods.

The controlling question is: Was R. E. Davis an agent of the Pullman Company who represented such corporation in its business? It is not deemed important to consider the relationship of McClellan separately.

The principal urge made by the defendant is that Davis was not in the employ of the Pullman Company, and therefore could not be its agent, and that, even if the Central of Georgia Railway Company was under the contract the agent of the Pullman Company, and if by acquiescence the Albany Terminal Company was treated by the Pullman Company as taking the place of the Central of Georgia Railway in this particular, the service could not be good because you cannot serve process by serving an agent of an agent. Numerous authorities are cited to sustain this proposition, the controlling principle of which is substantially set forth in Barnard v. Springfield Traction Co., 274 Ill. 148, 113 N. E. 89, L. R. A. 1916F, 451, and Chicago, B. & Q. Railroad Co. v. Weber, 219 Ill. 372, 76 N. E. 489, 4 L. R. A. (N. S.) 272.

The Central of Georgia Railway did not undertake to act as agent of the Pullman Company and the Pullman Company did not undertake to appoint or employ the Central of Georgia Railway as its agent. It follows, a fortiori, that the Albany Terminal Company was not the agent of the Pullman Company. The service therefore was not valid, if it depended upon the proposition of serving the agent of an agent. It narrows to the clear-cut question as to whether, under the foregoing facts, Davis was in fact the agent of the Pullman Company, though not so designated either by himself or by the Pullman Company.

[1] Laws Ex. Sess. 1923, p. 35.

There can be found many definitions of agency. In a number of instances the language would indicate that employment, coupled with the right to discharge or discipline, was an essential element. Under the peculiar facts of many cases this element might be controlling. But this element is not incorporated in many definitions of agency and is not an essential in many instances. Perhaps the following is as accurate a general definition as can be made: "An agency has been defined as a contract, either express or implied, by which one of the parties confides to the other the management of some business to be transacted in his name, or on his account, by which that other assumes to do the business, and to render an account of it." 21 R. C. L. 817.

[2] It is common knowledge that in many instances an agent is appointed where there is no question of employment or compensation. "It is not essential that any actual contract should subsist between the parties or that compensation should be expected by the agent." 21 R. C. L. 817, citing Doran v. Thomsen, 76 N. J. Law, 754, 71 A. 296, 19 L. R. A. (N. S.) 335, 131 Am. St. Rep. 677.

[3] It is not necessary that the parties shall understand among themselves that there is to be an agency. "If relations exist which will constitute an agency, it will be an agency, whether the parties understood it to be or not. Their private intentions will not affect it." 21 R. C. L. 819, citing Bradstreet Co. v. Gill, 72 Tex. 115, 9 S. W. 753, 2 L. R. A. 405, 13 Am. St. Rep. 768, and Taylor v. Conner, 41 Miss. 722, 97 Am. Dec. 419.

[4] The business of the Pullman Company in Georgia is not merely to furnish cars to be transported by the railroads, but also to reserve space and sell tickets. This is just as much a part of the business of the Pullman Company as is the selling of railroad tickets a part of the business of the railroads. It is through this ticket agent, Davis, that the Pullman Company enters into contracts with the public. It is through him that the patrons of the Pullman Company are furnished with evidence of the duty of the Pullman Company to such patrons. When the Central of Georgia Railway obligated itself to "require its ticket agents * * * to sell tickets for seats and berths in such cars without charge to the Pullman Company," did it not in effect say that it would require its agents to act as agents of the Pullman Company without charge to the Pullman Company and to

do for the Pullman Company exactly what would be done by any other seller of pullman tickets who might be in the employ of the Pullman Company itself, namely, to sell to would-be patrons of the Pullman Company tickets, or contracts representing rights of the patrons, receiving money therefor and accounting for such money to the Pullman Company, and receiving from the Pullman Company instructions as to how the business should be conducted? Is there not here every element of agency as defined above? As between the Pullman Company and the public, the agency is as fully established as if the Pullman Company employed, paid, disciplined, or discharged, rather than adopted as agent a person whom the Albany Terminal Company employed, paid, disciplined, or discharged. The fact that Davis was the agent of the Central of Georgia or of the Albany Terminal Company for the purpose of carrying on the duties intrusted to him by them would not in any way interfere with his being the agent of the Pullman Company. The Pullman Company, as principal, intrusted to Davis, as agent, the management of a part of its business in Georgia, and Davis undertook to account therefor. This constitutes Davis an agent upon whom service can be made under section 2258 of the Civil Code of Georgia 1910, and the service in this case is valid and binding. It follows that the plea in abatement and traverse to the return of the sheriff will be overruled.

[5] 2. The fact that the Pullman Company has designated three agents in Georgia as being their only agents is of no effect in the determination of this question. It may in perfect good faith claim that it recognizes no other such agents, but it is the substance and not the name which controls. If such designation were permitted to be controlling, the Pullman Company could nullify the law as to venue, and could require in many instances plaintiffs to seek recovery in far distant parts of the state.

[6] 3. The return as to leaving the writ and process at the place of business is not sufficient to make the service effective. The statute provides that service can be made "* * * by leaving the same at the place of transacting the usual and ordinary public business of such corporation." The return covering this feature is "* * * by leaving a copy of said writ and process with the said R. E. Davis and the said W. F. McClellan, each at the office and place of doing business of said corporation, in said county." The return omits to show

that it was "the place of transacting the usual and ordinary public business of such corporation."