THOMAS F. FLOODY v. GREAT NORTHERN RAILWAY COMPANY and Another.[1]

July 19, 1907.

Nos. 15,249—(182).

**Railway—Use of Union Depot.**

A railroad company is liable to its servants for the negligence of the employees of a union depot company, whose duty it is to operate the switches and direct the movement of the trains out of the depot yards. For the occasion, the servants of the depot company become the servants of the railroad company.

**Same.**

A switchman, who in the performance of his duty is required to ride on his engine while assisting in pulling a train out of the depot yards, is entitled to recover from his master, the railroad company, for injuries received by reason of the negligence of the depot company servants in operating a switch.

**New Trial.**

New trial granted upon the ground that certain instructions were misleading and for misconduct of a juror.

Action in the district court for Ramsey county against the Great Northern Railway Company and the Chicago, St. Paul, Minneapolis

[1] Reported in 112 N. W. 875, 1081.

102 M.—6

& Omaha Railway Company to recover $25,000 for personal injuries. The case was tried before Hallam, J., who granted a motion of the Great Northern Company to direct a verdict in its favor, and a jury which returned a verdict for $15,000, against the Omaha Company. From an order denying a motion for judgment notwithstanding the verdict or for a new trial, the Omaha Company appealed.    Reversed.

*James B. Sheean* and *Thomas Wilson,* for appellant.

*M. L. Countryman,* for respondent Great Northern Railway Company.

*Humphrey Barton,* for respondent Floody.

LEWIS, J.

The complaint alleges that plaintiff was a switchman in the employ of defendant the Chicago, St. Paul, Minneapolis & Omaha Railway Company; that defendant the Great Northern Railway Company owned, maintained, and operated railroad tracks running into the Union Depot of the city of St. Paul, over which, by agreement, the Omaha Company operated its passenger trains into the Union Depot; that in connection with its tracks and as a part thereof the Great Northern maintained and operated a certain switch over which it operated its passenger trains, and over which the Omaha also operated its trains; that May 9, 1906, and for some time prior thereto, the Great Northern, for the use of itself and the Omaha Company, in the operation of their trains, took charge of the switch for the purpose of operating the same; that while plaintiff was riding on a train of the Omaha Company the Great Northern Company carelessly and negligently failed to properly operate the switch, and the Omaha Company carelessly. and negligently attempted to operate its train over the switch, and as a result of the defective condition of the switch the train was derailed and the plaintiff injured.    The Omaha Company admitted that it operated its trains into the Union Depot over the tracks of the Great Northern, pursuant to an agreement to that effect, and that the Great Northern Company owned and operated the switches and tracks.    The Great Northern Company denied that it operated the switch, but admitted that it operated its trains into the Union Depot over the tracks in question. At the close of plaintiff's case defendants rested without introducing

any evidence, and on motion the court directed a verdict for the Great Northern Company, at which time counsel for the Omaha Company stated to the court: "I also understand that, in sending this case to the jury, all consideration of the defective condition of that switch will be excluded." Counsel for plaintiff then moved the court to instruct the jury that the only question of fact for the jury to consider was the amount of damages that plaintiff was entitled to recover. The motion was overruled, whereupon the court charged the jury, and a verdict was returned for plaintiff in the sum of $15,-000; and the Omaha Company moved for judgment notwithstanding the verdict or for a new trial. The court denied the motion for judgment notwithstanding, but granted a new trial, unless plaintiff should consent to a reduction of the verdict to $10,000, to which plaintiff consented, and the Omaha Company appealed from the order.

It was shown at the trial that the Union Depot Company, a corporation, owned the Union Depot and certain yards and terminal facilities, with engines and railway tracks; that seven different railway companies used the terminal facilities and the depot under and by virtue of certain contracts entered into with that company; that the Union Depot Company had in its employ a crew of switchmen, whose business it was to take charge of incoming and outgoing trains, to operate the switches, and to give the proper signals. The two defendants in this action were entitled to the use of the depot and yard facilities; but the Great Northern Company owned a right of way of its own, and at the time of the accident had constructed and was maintaining two tracks thereon, both of which the Omaha Company had the use of for the purpose of running in and out of the depot. About April 20, 1906, the Great Northern Company took out an old switch and constructed a new one in its place—being the one where the accident occurred—connecting tracks Nos. 1 and 2, over which the passenger trains of the Great Northern Company and its lessee companies were diverted to and upon tracks 1 and 2 and over the new switch. The evidence shows that the old switch was operated exclusively by the Union Depot Company switchmen, and on the occasion of the accident, May 9, and during the time from April 20, the new switch continued to be operated by the employees of that company. Plaintiff was in the employ of the Omaha Company as a

switchman, and it was his duty to ride down with his switch engine to the depot and assist in pulling the trains of that company out of the depot yards. The engine was in charge of an engineer and fireman, but in the exercise of his duties plaintiff was rightfully in the cabin of the engine. For some reason the switch in question was already open, or opened by the vibration of the approaching train, and as a result the engine was derailed, and tipped over, and plaintiff was caught under it and injured.

At the trial it was shown by the testimony of several of the switchmen in the employ of the Union Depot Company that the switch in question was not easily operated, for the reason that one of the iron rods, or arms, was too long, and, when the arm was thrown from one side to the other, it did not go down far enough to permit the dog to catch and retain it, so that the operator had to bear his weight on the arm, or jump on it, in order to press it down into place. One witness also testified that the dog, or catch, did not always go into place and hold the arm securely.

So far as defendant the Great Northern Company is concerned, the court was correct in ordering judgment in its favor, provided the evidence did not show that it had been negligent in constructing and maintaining a defective switch. The trial court seemed to have the impression that the switch was not defective to such an extent as to render that company liable, but that the manner in which the switch was constructed simply required greater care on the part of the switchman in operating it to see that the arm was pressed down and caught by the automatic fastening.

We are not at this time required to express any opinion as to this evidence; but, conceding that the Omaha Company cannot take advantage of the favor granted the Great Northern Company by the trial court in ordering judgment in its favor, the fact that the switch was imperfect (if it was) does not relieve the Omaha Company from the duty which it owed to plaintiff upon the occasion of his injury. As we understand the law, whether the engine was derailed by reason of the defective switch, or on account of the negligence of the switch tender in operating it, that company is liable for the result. It is not important whether the switch was operated by the employees of the Union Depot Company, as a part of their regular duties, or

whether they operated this particular switch without the special authority of the Union Depot Company, and for the accommodation of defendant companies. We are satisfied that, as between the Omaha Company and the plaintiff, the company accepted the services of the switchman on that particular occasion to the same extent as though he had been in its own employ.

Conceding that, under the contract between the Union Depot Company and the Omaha Company, the latter was required to take its trains out of the depot over the switches in the manner directed by the switch tenders in the employ of the Union Depot Company, yet that fact did not discharge the railroad company from the contract relation which it assumed as between itself and plaintiff. The test of liability is not determined by the fact that the switch tenders were in the employ and under the control of the Union Depot Company, and that by virtue of the contract between the switchmen and that company the relation of respondeat superior existed. The Omaha Company owed the duty to plaintiff to use all reasonable diligence to carry him safely in its engine out of the depot yards, and it was immaterial to plaintiff whether in so doing defendant operated its trains over its own tracks and switches, over the tracks and switches which it had leased from another company, or under a contract with the Union Depot Company. It was immaterial to plaintiff that the switchmen were paid by the Union Depot Company, and were under its control in operating the switches, if, for the occasion, the Omaha Company chose to avail itself of the services of that company and its employees for the purpose of taking its train out of the depot.

The principle is well illustrated in the case of Wabash v. Peyton, 106 Ill. 534, 46 Am. 705, where the Wabash Company had leased from the Chicago & Western Indiana Railway Company the right to run its trains over a portion of the road of that company at a station at which several railroad companies ran, and from which their trains departed. The lessor company retained control of the Wabash Company's passenger trains over that portion of the track, and by its servants directed and controlled the trains in going in and out of the depot. The question was the liability of the Wabash Company for the acts of the servants of the lessor company in leaving lumber piled contiguous to the track, by reason of which the Wabash train

caused injury to a stranger. The court held the Wabash Company voluntarily placed its engine and cars at that place, under the control and direction of the employees of the lessor company, and for the time being and for that purpose the yardmaster of the lessor company became the servant of the Wabash, and liability could not be escaped upon the ground that such yardmaster was under the control of the lessor. The case was referred to and approved in Murray v. Lehigh Valley, 66 Conn. 512, 34 Atl. 506, 32 L. R. A. 539, and the court said: "The case shows that, in the use of the portion of track owned by the Central Railroad Company, this defendant was bound by its agreement with that company to obey the orders and signals given by the servants of that company. The case shows, then, that to the extent of that agreement, and for the purposes included in it, this defendant had, by the terms of that agreement, made the servants of that company its own servants; and as the case further shows that the train on which the plaintiff was a passenger was upon this portion of track, and was being operated in obedience to the orders of those persons who by the agreement were the servants of this defendant, we think the charge was fully justified." See, also, Taylor v. Western Pacific, 45 Cal. 323; McElroy v. Nashua, 4 Cush. 400, 50 Am. Dec. 794. And see the discussion in the opinion of Holmes, J., in Littlejohn v. Fitchburg, 148 Mass. 478, 20 N. E. 103, 2 L. R. A. 502.

Brady v. Chicago & G. W. Ry. Co., 114 Fed. 100, 52 C. C. A. 48, 57 L. R. A. 712, a similar case to the one under consideration, was decided adversely to our views. There it was held that the switchmen were not the servants pro hac vice of the railway company, because they were not subject to its commands and directions, and the court distinguished the cases above cited upon the ground that the power to command, direct, and control the employees with respect to the negligent act was vested in the master of the servant injured. We perceive no difference in principle. In each case the relation between the parties was governed by contract, and for the benefit of the carrier charged with negligence, and it is immaterial that the facilities were furnished by another carrier, rather than by an independent corporation, not a carrier in the general sense. Although the plaintiff's complaint did not directly charge that the Omaha Com-

pany had negligently operated the switch in question, but confined itself to an allegation that it negligently operated its train over a defective switch, yet no objection was made at the trial in this respect, and the case proceeded and was submitted to the jury upon the theory that, if the Omaha Company was liable at all, it was by reason of the negligent operation of the switch, and hence no error can be based upon the fact that the complaint was deficient.

The motion for a new trial was made in part upon the ground that one of the jurors while the trial was in progress visited the Union Depot Yards and personally examined the switch, observing its operation, as well as that of other switches in the yard, without the knowledge of any of the parties or of the trial court. Error was also assigned upon the ground that one of the jurors was under the influence of intoxicating liquor during the trial to such an extent as to interfere with his judgment. The court came to the conclusion that it was not satisfactorily shown that the juror was affected by the use of intoxicants, and also held that the visit of the juror to the yards did not prejudice defendant, for the reason that it was liable in any event, whether the accident was occasioned by reason of the defective switch or of negligence in its operation. On this subject the court stated to the jury that there was not sufficient evidence that the defective condition of the switch caused or contributed to the plaintiff's injury; but, even if there was not sufficient evidence to justify the jury in finding as a fact that the injury resulted from such defective switch, still, if they should find that the Omaha Company had notice of such defect as did exist, or could, by the exercise of ordinary care, have discovered it, then the judge should find for the plaintiff, even if they should find that the accident must have happened either from such defective condition of the switch or from the negligence of the tender.

We believe that instruction was misleading. The jury were justified in assuming that, although there was no evidence to indicate that the switch was defective, yet they might take such defect as existed into consideration in determining whether the Omaha Company was guilty of negligence in operating it. While, as already stated, the Omaha Company was liable if the injury resulted from the defect in the switch, or from its negligent operation, yet wheth-

er the switch was negligently operated depended somewhat upon its construction. If defective, as claimed, it required a higher degree of care in operating it, and the condition of the switch became an essential element with the jury in considering the conduct of the switchman. The jury returned a verdict for plaintiff in the sum of $15,000, which the trial court considered excessive and reduced it by one-third. To what extent the verdict was influenced by the condition of the switch, as found by the juror who visited the yards, does not appear, but it will be presumed that the knowledge so obtained was prejudicial, and under such circumstances the error cannot be cured by a mere reduction of the verdict.

Although plaintiff took an appeal from the order of the court directing a verdict in favor of the Great Northern Company, the same was abandoned. The Omaha Company appealed from the order directing a verdict in favor of its codefendant, and submits that, if a new trial is granted upon any ground, it should be granted as to its codefendant. The Great Northern Company, however, insists that, plaintiff having abandoned his appeal as to itself, the Omaha Company has no standing to question the correctness of that order. The Great Northern Company was brought into the case as one of the defendants at the will of plaintiff, and not by any act of the Omaha Company. The record does not indicate that the former is under any obligation to the latter, and we find no reason to interfere with the direction of the court.

Reversed. New trial as to appellant, the Chicago, St. Paul, Minneapolis & Omaha Railway Company.

On September 27, 1907, the following opinion was filed:

PER CURIAM.

The application for reargument is denied, but for the sake of clearness it may be stated that, in deciding the case, the court held that the evidence was not sufficient to show as a matter of law that the switch was defectively constructed or was negligently operated. The court held that, with reference to those questions, there was some evidence for the jury to pass upon. A new trial was granted upon the ground that the instructions were misleading, for misconduct of

a juror, and upon the ground that the verdict was so excessive that the errors were not cured by a reduction thereof by the court.

As to the defendant Great Northern Railway Company, the court did not pass upon the merits of any question relative to its liability. No appeal was perfected as to that defendant by appellant, and the appeal by the Omaha Company was ineffectual to present those questions.