THOMAS F. FLOODY v. CHICAGO, ST. PAUL, MINNEAPOLIS & OMAHA
RAILWAY COMPANY and Another.[1]

December 10, 1909.

Nos. 16, 096—(44).

**Duty of Tenant Company Operating on Leased Tracks.**

A railway company running its trains over the leased tracks of another
company is not relieved of the duty it owes to its employees to use reason-
able care to provide for the safe operation of its trains while upon such
leased tracks.

**Negligence of Union Depot Company.**

A depot company, operating a union depot under the control and for the
convenience of several railway companies, is the servant of the one for which
it performs a particular act; and, if the act is negligently performed, the rail-
way company is liable to its employee injured thereby.

**Fellow Servant — Liability of Tenant for Negligence of Landlord's Serv-
ant.**

A switchman in the employ of a union depot company is not a fellow
servant of a switchman in the employ of a railway company running trains
to the depot, as the term "fellow servant" is used when the common-law
rule is invoked that a master is not liable for injuries received through the
negligence of a coemployee. Nevertheless the railway company may be
liable to its servant for personal injuries received because of the negligence
of the depot employee.

**Same.**

The act of a switchman employed by the depot company in throwing a
switch for the passage of a railway company's train is the act of the depot
company, and may render the railway company liable to its injured em-
ployee. Floody v. Great Northern Ry. Co., 102 Minn. 81, followed.

**Evidence of Negligence.**

Evidence considered, and *held* sufficient to sustain a finding of negligence.

Action against defendant railway company and Edward S. Wood
in the district court for Ramsey county to recover $25,000 damages
for personal injuries received while in the employ of that company.

[1] Reported in 123 N. W. 815.

The complaint alleged, inter alia, that the defendant railway, by virtue of an agreement between those companies, ran its passenger trains over two railroad tracks owned by the Great Northern Railway Company, which were connected by a switch just outside of the Union Depot property, set out a detailed description of the puzzle switch mentioned in the opinion, alleged that defendant railway company provided defendant Wood to throw and lock said switch, and when it was in proper position to signal the train to come ahead over the switch; "that for a considerable time prior to the derailment mentioned, the said defendant Wood had been so throwing and handling said switch for said defendant at its special instance and request and with its acceptance, approval, and direction and as its servant and employee. That as originally constructed and as maintained and operated by the said defendant railway company at and during all the times herein mentioned and referred to, the said switch was defective in that the rods and mechanism thereof were improperly adjusted and incorrect in dimensions and length, and by virtue thereof it was exceedingly difficult to throw and lock said switch.   *   *   *   That all these facts were at and during all of the times herein mentioned and referred to well known to the defendants and each of them, but notwithstanding such facts the said defendant railway company did carelessly and negligently continue to operate the said switch in said condition and run its trains over the same." That on the day of the accident "for the purpose of attending to the said switch and throwing it for the passage of said train the said defendant Wood, at the special instance and request as aforesaid of said defendant railway company and as its servant and employee and with its acceptance, acquiescence, and approval as aforesaid, was present at said switch to throw and lock the same.   *   *   *   That the defendants did at said time and place carelessly and negligently fail to throw and lock the said switch and levers for the said train to pass over the same as it was intending to do, but on the contrary, carelessly and negligently caused and permitted the said switch and tumbler lever to be out of position for the passage of said train and unlocked, the said tumbler lever being up at an angle of about forty five degrees and did carelessly and negligently cause the said train to run upon the

said switch, and the engines of said train were, by virtue of said switch not being properly thrown and locked, derailed." The defendants in their separate answers denied the allegations of the complaint.

The case was tried before Orr, J., and a jury which returned a verdict for $8,500 in favor of plaintiff. From an order denying the motion of defendant company for judgment notwithstanding the verdict or for a new trial, it appealed. From an order denying defendant Wood's motion for judgment notwithstanding the verdict or for a new trial, he appealed. Affirmed.

*James B. Sheean* and *Thomas Wilson,* for appellants.

*Barton & Kay,* for respondent.

O'BRIEN, J.

This case, in one form or another, has been before this court several times.[2] The merits of plaintiff's claims were considered in Floody v. Great Northern Ry. Co., 102 Minn. 81, 112 N. W. 875, 1081, 13 L. R. A. (N. S.) 1196. In that case plaintiff had sued the Great Northern and Chicago, St. Paul, Minneapolis & Omaha Railway companies, and obtained a verdict against the Omaha; judgment being directed in favor of the Great Northern. A new trial of the action against the Omaha was directed by this court for errors of law and misconduct of a juror. Subsequently the district court vacated its order directing judgment in favor of the Great Northern. Plaintiff then served notice of dismissal, and commenced this action against the Omaha Company and Edward S. Wood, the switchman upon whose claimed negligence the plaintiff bases his right to recover. It is not necessary to mention other incidents, as no error because of any of them is assigned upon this appeal. This case came on for trial May 19, 1908, and the plaintiff had a verdict from the jury. The defendants appeal from an order denying an alternative motion for judgment or a new trial.

The appellant the Omaha Railway Company held a contract or lease from the Great Northern Railway Company giving it the right

[2] See 102 Minn. 81; 104 Minn. 132, 474, 517; 108 Minn. 216 [Reporter].

to use certain tracks belonging to the Great Northern in the city of St. Paul and adjoining the Union Depot grounds in that city. The original contract was entered into many years ago between the respective predecessors of these railway companies, and the evidence tends to establish the fact that the lease or contract has been liberally construed by the companies and understood to allow the Omaha the use to a greater or less extent of tracks belonging to the Great Northern which were not in existence at the time the contract was executed. Up to April 19, 1906, the Omaha Company had, under this contract, used for the passage of its trains to and from the Union Depot two certain tracks, the property of the Great Northern. These tracks met the Union Depot tracks at the center of Third street, at the boundary of the depot grounds. No switch was necessary at this point; the rails being connected and forming continuous tracks. The trains while upon the depot grounds were, as to switching, under the direction of the Depot Company.

The Union Depot Company is a corporation maintaining a depot for the benefit and convenience of the various railway companies entering the city. It has its own officers and employees, one of whom was the defendant Wood. On April 19, 1906, the Great Northern Company had completed upon its own right of way a track which entered the depot grounds about one thousand feet west of the point already described, where its tracks used by the Omaha Company connected with the depot tracks. It thereupon broke that connection, and placed what is known as a puzzle switch at the new point, and directed the Depot Company to send over this new track trains which had formerly left the depot grounds at the center of Third street. The evidence tends to establish the fact that the switch itself was upon the Great Northern property, but was operated by the employees of the Depot Company. The general superintendent of the Omaha Company testified he never knew of this change, nor was there any evidence that any one connected with that company, except its train employees, had actual knowledge of the situation. As its name implies, the puzzle switch is quite complicated. This particular one was difficult to operate, and, unless care was taken to firmly secure

.the lever, the rails were liable to be so placed as to cause the derailment of an engine or car entering the switch.

On the evening of May 9, 1906, the plaintiff, a switchman in the employ of the Omaha Company, was lawfully upon a switch engine attached to one of that company's passenger trains leaving the Union Depot for Minneapolis. Wood, the switchman in charge of the puzzle switch, threw the lever for the purpose of adjusting it so as to send the train upon the new track of the Great Northern Company, after which he signaled the train to advance, and the engine and forward trucks of the mail car were derailed at the switch. The plaintiff was thrown or jumped from the engine, was caught under the wheels of the tender, and permanently injured.

The plaintiff claims that the defendant Wood was negligent in failing to force home and secure the lever. The appellant railway contends that the plaintiff is not entitled to recover against it: (1) Because the accident occurred upon the property of the Great Northern Railway Company at a place not included within the terms of the contract between it and the Great Northern; (2) that the sending of the Omaha train over the switch described was an unauthorized and wrongful act of the Depot and the Great Northern companies, and was done without the knowledge or consent of the appellant the Omaha Company; (3) that Wood was not its servant, and, therefore, not a fellow servant of the plaintiff, and the appellant is not responsible for his negligence. Both appellants contend that the evidence was not sufficient to sustain a finding that Wood was negligent.

Fairly construing the charge, the jury was instructed that under the evidence the location of the switch and new track was immaterial; the fact that the officers of the Omaha Company had no knowledge of the change in the tracks was also immaterial, if the employees of that company operating its trains had such knowledge; and, finally, that if Wood's negligence caused the accident the appellants were each responsible in damages to the plaintiff, because the plaintiff and the switchman were fellow servants. By various requests for directions on the trial, exceptions duly taken, and assignments of error on this appeal, the appellants have challenged each of these instructions.

It is insisted that the testimony in the record on this appeal establishes different facts from those shown by the record upon the appeal taken after the first verdict. Floody v. Great Northern Ry. Co., supra. We think the testimony was clearer at this last trial, at least with reference to the location of the various tracks and switches. The parties are also different. We are, however, of the opinion that a reversal of the order appealed from here would be tantamount to overruling the decision of this court to which we have referred; but, in view of the earnest and forceful presentation of the appellant's claims, we have determined to restate our views.

1. The appellant is a railroad company operating a large general system of railways. It is a matter of common knowledge that a company so situated has necessarily to make contracts with other companies involving the use of roadway, equipments, and appliances by one belonging to the other. The ordinary employees of the company are not instructed concerning the details of such contracts, or required to inform themselves upon them, and if, in the regular course of the running of its trains the appellant company acquired the right to and did use the tracks of other railway companies, and sent the plaintiff out upon these tracks, it is difficult to see how it relieved itself from any of the duties which it owed to the plaintiff as his master. The testimony showing the course of business adopted by the Omaha and Great Northern Railway companies for the joint use of the Great Northern tracks is not sufficient to show that the change made in the tracks by the Great Northern Company was so unauthorized, or so far violated the contract between them, as they themselves had construed it, that the appellant company was under no responsibility to the plaintiff while its train was upon that track.

Since the original contract was so made between the railway companies which were the respective predecessors of the present parties to it, a large number of tracks have been constructed in and about the place referred to. It is almost inconceivable that the Great Northern Company would, without notice to, and in violation of its contract with, the Omaha Company, tear up one set of tracks and construct entirely new ones, unless it believed that, so long as it furnished sufficient trackage to the Omaha Company to enable it to

run its trains to and from the Union Depot, it was complying with the spirit of the contract; and the fact that the new tracks were so used without protest for nineteen days prior to the accident is some evidence, at least, that the Great Northern Company was right in so construing the contract. We do not think that notice of this change to the trainmen was, of itself, notice to the company; but, if in fact the parties to the contract treated it in the manner we have suggested, actual notice of the particular change was not necessary. Upon the other hand, if the evidence does not support this view, the conclusion cannot be avoided that the proper officers of the Omaha ought to have known of the change. It knew that its trains were entering and leaving the Union Depot. The obligation was upon it to maintain a safe way for such trains. It did not perform the duty which it owed to its employees, including the plaintiff, if for nineteen days it was possible without its knowledge to improperly divert its trains to tracks which it had no right, and was not willing, to use.

2. The switch where the accident occurred was operated by an employee of the Union Depot Company, under the direction of that company, and was an instrumentality used in connection with the transaction of business conducted by the depot company. We think, therefore, that the trial judge was justified in instructing the jury that it was immaterial whether the switch and tracks leading from it were located upon the grounds of the Depot or Great Northern companies.

3. The jury was instructed that the appellant company was responsible for any negligence upon the part of the switchman Wood; that he was a fellow servant of the plaintiff. The fact that the trial judge stated that the plaintiff and Wood were fellow servants is immaterial, if for any reason the Omaha Company was so responsible. Having been directly instructed that the appellant was under that responsibility, it can hardly be presumed that the jury concerned itself with the legal definition of the relation existing between the two men. The propriety of this entire instruction must be determined by ascertaining whether or not the railway company is so responsible, notwithstanding the fact that Wood and the plaintiff

may not have been fellow servants in every sense in which that term is used.

This brings us to what we understand to be the main contention of the appellant company. Counsel have cited a large number of cases holding that persons occupying the relative positions held by Wood and the plaintiff at the time of this accident are not fellow servants. Most of those decisions were rendered in cases where the employee of one company was injured through the negligence of an employee of another company, and where the injured person sought to hold the master of the negligent servant. In all those cases it was held that those employees were not fellow servants; that, the one injured being lawfully upon the premises of the master of the negligent servant, the master was responsible, and could not escape such responsibility by claiming that his negligent employee and the person injured were fellow servants. Smith v. New York, 19 N. Y. 127, 75 Am. Dec. 305; Phillips v. Chicago, 64 Wis. 475, 25 N. W. 544; Chicago v. Vandenberg, 164 Ind. 470, 73 N. E. 990.

The authorities cited by appellants hold, and we agree, that these two men were not fellow servants within the meaning of that term when the common-law rule, as to the nonliability of the master for injuries received by a servant through the negligence of a co-employee, is invoked to avoid liability. Fellow servants, in that sense, are those who not only are engaged in the same general employment, but who also have a common master. The rule was based upon the theory that the servant in entering the master's employment assumed the risk of being injured through the negligence of another servant, whose conduct and demeanor he had a better opportunity of observing than had the master. Primarily the master was liable for injuries suffered by any person through the negligence of his servants; but to this the courts added the doctrine that, if such injuries were received by a fellow servant of the careless employee, it must be presumed that such carelessness was one of the risks assumed. The limited sense in which the term "fellow servants" is thus used is indicated very clearly in Wood's Law of Master and Servant, §§ 435, 436. It does not follow, however, because the plaintiff and the switchman were not

fellow servants who would be presumed at common law to have assumed the risk of each other's negligence, that the appellant company, because of the statute abolishing the rule as to railroads, is not responsible for injuries caused by the negligence of Wood, when he was in fact assisting and taking part in the movement of its trains. The statute enlarges, but does not attempt to limit, the liability of the companies.

The Union Depot Company, while a separate legal entity, was shown by the testimony to be the common servant of all the railroads running passenger trains into the depot. It cannot be said to occupy the position of an independent contractor; for, while it furnishes the depot and grounds and generally dictates upon which track a particular train shall go, each railroad company through its own employees retains control of some part of the operation of each train. That the depot company was brought into existence by the railroad companies for their convenience, and is under the joint control of the railroads using it, is sufficient to show that it is not, in this case, to be considered an independent contractor, but rather in the common employment of the Omaha and the other railway companies. State v. St. Paul Union Depot Co., 42 Minn. 142, 43 N. W. 840, 6 L. R. A. 234.

A corporation can only act through human beings. It was the duty of the depot company to operate the switch in question, and it operated it through the switchman Wood. His act was the act of the depot company, performed by him in the regular course of his employment, pursuant to the instructions he had received from his superior officers. His negligence was the negligence of the Union Depot Company. That company was the servant of the Omaha Railway Company, and the conclusion is unavoidable that under the circumstances of this case the appellant railway company is liable to the plaintiff for the injuries he received, if the accident was caused by the negligence of the switchman Wood. Kastl v. Wabash, 114 Mich. 53, 72 N. W. 28.

Abundant authorities hold that, where the passenger of a company leasing trackage rights from another railway is injured through the negligence of an employee of the lessor, he may recover from the

lessee whose passenger he was. Murray v. Lehigh, 66 Conn. 512, 34 Atl. 506, 32 L. R. A. 539; McElroy v. Nashua, 4 Cush. 400, 50 Am. Dec. 794. As applied to this case, we see no difference in principle between passenger and employee. While the degree of care required is different, the company in both cases undertakes to provide for the safe operation of its trains. The case of Brady v. Chicago, 114 Fed. 100, 52 C. C. A. 48, 57 L. R. A. 712, makes a distinction, and under that authority the plaintiff could not recover from the Omaha Company; but this court refused to follow the Brady case upon the former appeal, and we adhere to that holding. Kastl v. Wabash Ry. Co., supra; Wabash v. Peyton, 106 Ill. 534, 46 Am. 705; Taylor v. Western, 45 Cal. 324.

4. The evidence was sufficient to sustain a finding that Wood was negligent. It was shown that the switch was difficult to operate; that great force was required to bring the lever home; that a metal dog, or catch, was attached, which was intended to fasten and hold the lever when placed; that if the lever was not forced home, and if not caught and held by the dog, the rails composing the switch were liable to become misplaced from the vibrations caused by passing trains. After the accident, the lever was found at an angle of about forty-five degrees. The switchman Wood testified that he had placed the entire weight of his body upon the lever for the purpose of forcing it home, and believed that he had done so; but he admitted that, although he knew of the existence of the dog or catch, he did not observe, and did not know, whether it had actually fallen into position, or caught, at the time in question. The switch was one requiring careful operation. Wood knew that its operation was difficult. He knew that it was supplied with means by which the lever could be fastened. Without satisfying himself that the lever had been so fastened, he signaled the train to advance, which it is presumed it would not have done in the absence of his affirmative action. The derailment of the engines was just what might be expected if the rails of the switch were not properly adjusted. This was sufficient evidence to sustain a finding of negligence upon the part of Wood.

Order affirmed.