# MAX SCHOEN v. CHICAGO, ST. PAUL, MINNEAPOLIS & OMAHA RAILWAY COMPANY and Another.[1]

July 29, 1910.

Nos. 16,637—(174).

**Joint operation of private railway yard —fellow servant — contributory negligence.**

Defendants, a railway company and a brewing company respectively, entered into a contract with each other whereby for a fixed rental the railway company furnished to the brewing company a locomotive for the exclusive use of the brewing company in a yard containing tracks and switches, the ties and rails for which were owned by the railway company and the real estate by the brewing company. The engineer and fireman operating the locomotive were selected by the railway company and paid by the brewing company. *Held:*

1. The operation of the yard and locomotive was a joint enterprise of the defendants directly connected with their respective activities.

2. The maintenance and operation of such yard is the operation of a railroad, as defined by section 2042, R. L. 1905, and the common-law rule as to the nonliability of the master for personal injuries received by an employee through the negligence of a fellow servant does not apply, where such injury is received because of exposure to a hazard peculiar to railroads.

3. One who is run down by a locomotive upon a railroad track is injured as the result of exposure to a railroad hazard.

4. The railroad yard was maintained jointly by the defendants. The plaintiff, a janitor for the adjacent buildings of only one of the defendants, and under the exclusive control of that defendant, was not a fellow servant of the men in charge of the yard locomotive.

5. Evidence considered, and *held* not to show that plaintiff was conclusively guilty of contributory negligence as a matter of law.

[1]Reported in 127 N. W. 433.

[Note] What constitutes operation of railroad under statutes abrogating fellow servant rule as to railroads, see notes in 1 L.R.A.(N.S.) 696, and 6 L.R.A. (N.S.) 452.

What is a railroad hazard within statutes abolishing or restricting fellow servant rule, see notes in 18 L.R.A.(N.S.) 478, and 22 L.R.A.(N.S.) 969.

Action in the district court for Ramsey county against Chicago, St. Paul, Minneapolis & Omaha Railway Company and Theo. Hamm Brewing Company to recover $20,500 for personal injuries caused by defendants' careless operation of a switch engine across Reaney street in St. Paul. The complaint alleged that defendants negligently and wantonly operated their engine and cars in approaching Reaney street and a path on which plaintiff was, without giving any warning of its approach, with full knowledge of plaintiff's position and the work he was engaged in, and in failing to have a man on the footboard to keep a lookout and give warning to persons about to cross the tracks at that street. The defendant railway company denied that the men operating the engine were its servants, and alleged that they were exclusively under the control of the defendant brewing company. The brewing company denied the allegations of the complaint and set up the contributory negligence of plaintiff. The case was tried before Olin B. Lewis, J., who, at the close of plaintiff's case, directed a verdict in favor of defendants. From an order denying plaintiff's motion for a new trial, he appealed. Reversed and new trial ordered.

*H. A. Loughran,* for appellant.

*James B. Sheean,* for respondent Chicago, St. Paul, Minneapolis & Omaha Railway Company.

*How, Butler & Mitchell,* for respondent Hamm Brewing Company.

O'BRIEN, J.

Plaintiff was employed as janitor by defendant brewing company, and was run over by a switch engine owned by the defendant railway company where certain tracks devoted exclusively to the use of the brewing company crossed Reaney street, a public street of St. Paul. The brewing plant consisted of several buildings, some of which were separated by public streets. Between these buildings railroad tracks for the use of the brewing company had been constructed upon land owned by it; the track materials being the property of the railway company. The contract between these defendant companies in substance was that in consideration of a fixed rental the railway company furnished a switch engine for the exclusive use of the brew-

ing company, selected the men to operate the same, whose wages were paid by the brewing company, and, further, the brewing company assumed all liability for injury caused by the operation of the engine.

In the course of his duties the plaintiff was required to visit different buildings of his employer, and when injured was bringing from the office building to another building several rolls of paper which he had strung upon an iron band or hoop. He proceeded for some distance almost parallel with the tracks, intending to cross them at Reaney street and proceed to the building which was his destination. He testified that when he left the office building with the paper the engine was stationary, and when he was about twenty-five feet from the street he again looked and saw the engine stationary at the same point, which was behind him as he walked and about one hundred thirty-five feet from the street. Just as he reached the street and the first track, one end of the band slipped from his hand. He stooped to readjust the band, and was struck by the engine, which approached without any warning or signal, although the custom was to ring the bell upon the engine when it was moving in the yard. At the close of plaintiff's testimony a verdict in favor of each of the defendants was directed. Plaintiff appeals from an order denying a new trial as to both defendants.

1. Upon behalf of the railway company it is claimed that it is not responsible because the accident did not occur upon its right of way, and because the engine was leased to and under the control of the brewing company, and operated by the employees of that company. We cannot agree with this contention. The engine was its property, devoted to a special purpose, it is true, but for the benefit of the railway company, as well as for that of the brewing company, and clearly as a part of and in furtherance of the activities of both. The railway selected, and therefore to some extent controlled, the persons who operated the engine, which crossed and recrossed a public thoroughfare, and it could not by a private contract with the brewing company avoid its responsibilities to persons lawfully using the public streets. The most that can be claimed from the arrangement is that it was a joint enterprise, over which each defendant exerted

some, but not exclusive, control, and therefore either or both may be liable.

2. Upon behalf of the brewing company it is claimed the plaintiff and those in charge of the engine were fellow servants, that the brewing company is not a railroad company, nor is it engaged in operating a railroad, and therefore is not liable to plaintiff for an injury received through the negligence of a fellow servant. Section 2042, R. L. 1905, reads: "Every company owning or operating, as a common carrier or otherwise, a railroad, shall be liable for all damages sustained within this state by any agent or servant thereof, without contributory negligence on his part, by reason of the negligence of any other servant thereof.   *   *   *"

How far the brewing company was authorized to operate a railroad is immaterial, if it in fact took part in such operation. The pertinent question is: Was the place where the accident happened a railroad yard, whether controlled and maintained by the brewing company alone, or jointly with the railway company? The tracks were railroad tracks, the engine a railroad engine, and the operations of both such as belong to and form part of the operations of every railroad system. We have no doubt, therefore, that the use of the tracks and engine for the purpose of moving freight cars to and from the brewery, as described in the testimony, was within the operation of a railroad and covered by section 2042. It follows from this that, if the defendants were joint operators of the yard, neither of them can escape liability to an injured person upon the ground that the injury resulted from the negligence of a fellow servant, if the injured employee was exposed to a railroad hazard. There can be no doubt of plaintiff's exposure to such hazard. Tay v. Willmar & S. F. Ry. Co., 100 Minn. 131, 110 N. W. 433; Mikkelson v. Truesdale, 63 Minn. 137, 65 N. W. 260; Nichols v. Chicago, M. & St. P. Ry. Co. 60 Minn. 319, 62 N. W. 386.

3. In addition, we do not think the plaintiff was the fellow servant of those operating the engine. As already said, each of the defendants must be held to have participated in the operation of the yard and rolling stock. Each exercised some control over the enginemen. The plaintiff, however, was under the exclusive control of the brew-

ing company. . Plaintiff's duties and those of the enginemen were entirely unconnected, and it is at least very doubtful if they were fellow servants within the rule which exempts the master from liability for injuries sustained by the servant through the negligence of a coservant. We have no desire to extend that doctrine. It can only be invoked as to servants engaged in prosecution of a common enterprise and who are under identical control. While the specific duties performed by each may be different the enterprise and control must be identical. Wood, Master & Servant (2d Ed.) § 435; Floody v. Chicago, St. P., M. & O. Ry. Co., 109 Minn. 228, 123 N. W. 815.

4. The final conclusion of the trial court was that plaintiff was guilty of contributory negligence. If he was negligent as a matter of law, neither of the defendants would be liable. Our conclusion, however, is that plaintiff's testimony did not conclusively establish negligence upon his part. In the performance of his duties plaintiff was required to cross the tracks. In doing so he proceeded for some distance practically parallel with the tracks upon a path commonly used by other persons upon the premises. This path gradually approached one of the tracks at the point where it crossed Reaney street, and, as we understand plaintiff's testimony, it was his intention, when he reached the walk crossing Reaney street, to cross the track upon the sidewalk at that point. When he left the building in which he had procured the rolls of paper, the engine was, according to his testimony, stationary at a point about one hundred thirty-five feet from the street. When he reached a point about twenty-five feet from the street, he had occasion to readjust the rolls of paper, and he again looked for the engine, and saw it still stationary at the same point. Without stopping or looking again, he traversed the twenty-five feet to the street, and just as he arrived at that point, which brought him practically upon the outer rail of the track, he again had some difficulty with the load he was carrying, and while stooping to readjust it was struck. He testified positively that no bell was rung or other warning given him of the approach of the engine.

A perplexing question is generally presented in cases where one lawfully upon railroad tracks is run down by an engine or train also lawfully upon the track. In such cases it is generally apparent that

scrupulous care upon the part of the injured person would have prevented the accident, and it is not always easy to say when the negligence of the injured person is for the jury. We have first the familiar cases requiring one approaching a public crossing to satisfy himself by proper precaution that he may go upon the track with safety. Schneider v. Northern Pacific Ry. Co., 81 Minn. 383, 84 N. W. 124. Again, there are those cases holding that an employee engaged at work upon a track may rely upon the custom and duty of those operating trains to warn him of their approach, and so, where no such warning is given, and the employee lawfully engrossed in his work is injured, he may recover. Graham v. Minneapolis, St. P. & S. S. M. Ry. Co., 95 Minn. 49, 103 N. W. 714. We are unable to see that this case falls entirely within either class.

Plaintiff's view was open and unobstructed. His duties did not require him to be upon the track for any appreciable length of time, nor were they such as would engross his attention otherwise than would be the case with any pedestrian crossing the tracks upon Reaney street. The testimony, if true, established the negligence of the engineer in failing to give any signal of the engine's approach to the crossing. The engineer's view was also unobstructed. He could have seen the plaintiff; and in any event he was charged with notice that he was approaching a public street.

The pivotal question, therefore, is whether the plaintiff exercised reasonable care when he satisfied himself, while still twenty-five feet from the crossing, that the engine was stationary, and that he might cross the track in safety without again looking in the direction of the engine. In Magliani v. Minnesota T. Ry. Co., 108 Minn. 148, 121 N. W. 635, a workman lawfully traversing the railroad yard was run down and killed by an engine which was backing through the yard pulling several cars to which it was attached. The yard was open and unobstructed, as in this case. The evidence there was to the effect that the engineer did not see the man upon the track. In this case there is no evidence upon that question. In the Magliani case there was no evidence that the deceased paid the slightest regard to the operation of the trains in the yard, and it was held that by the exercise of any ordinary care upon his part he would inevitably

have seen the approach of the train.   The difference between that case and the present one arises just at this point.   This plaintiff testified he did see the engine when he was twenty-five feet from the crossing; that it was then stationary; that he believed, if the engine was moved, warning of that fact would be given by ringing the bell; and in reliance upon those circumstances he went forward upon the track. Under such testimony the jury should have determined whether plaintiff acted as would an ordinarily prudent person under those circumstances, or failed to do so and was guilty of contributory negligence. Lewis v. Chicago, St. P., M. & O. Ry. Co., 110 Minn. 509, 127 N. W. 180.

Order reversed, and new trial ordered.