IN RE BARBARA SOLLIDAY v. ST. PAUL UNION DEPOT
COMPANY.
MINNEAPOLIS, ST. PAUL & SAULT STE. MARIE RAILWAY
COMPANY, APPELLANT.[1]

August 2, 1929.

No. 27,394.

*Henry S. Mitchell, John E. Palmer* and *James L. Hetland,* for
appellant.
*O'Brien, Horn & Stringer,* for respondent.

HOLT, J.
Barbara Solliday sued the St. Paul Depot Company for damages
sustained in a fall while passing down a stairway in the station to

[1]Reported in 226 N. W. 572.

the room where she intended to check a dog as baggage on the train of appellant by which she was to take passage to Turtle Lake, Wisconsin, some three hours later. Appellant was requested to take over the defense, but refused. The suit was settled for $1,025, the amount being approved by appellant. Refusing to reimburse respondent, this action was brought and submitted to Honorable Oscar Hallam, as arbitrator, for decision. It went against appellant. The decision of the arbitrator was affirmed by the district court. From the judgment entered thereon this appeal is taken.

Mrs. Solliday in her complaint alleged that she was directed at the information counter of the St. Paul Union Depot or station to descend a certain stairway to the basement thereof to check her dog as baggage to her destination; that she descended the stairway designated, and while so doing fell upon a portion thereof which the servants of the depot company, because of negligence, had failed to light properly; and that such negligence caused her fall and injury. When the present controversy was submitted to arbitration it was agreed that the sole question for decision was whether or not appellant was obligated under the operating agreement existing between the depot company and the nine railway companies parties thereto, of which appellant was one, to defend the Solliday suit, and, the same having been discharged at the expense of the depot company, to reimburse the latter therefor.

Respondent rests its right to reimbursement from appellant upon this provision of the contract:

"Section 8. It is understood and agreed that The Depot Company shall have the control, management and supervision of said grounds, passenger station, tracks and railways, and of the business thereof; but, inasmuch as the officers, agents and employes of The Depot Company are in fact employed for and in furtherance of the business of the companies using said grounds, depot, tracks, railways and transfer privileges, it is understood and agreed between the parties hereto that The Depot Company shall not be liable or responsible in any manner whatsoever, as master or otherwise to the Railway Companies, or any or either of them, for the fault or

neglect of the officers, agents or employes of The Depot Company * * *; and each of the Railway Companies, respectively, agrees to save and indemnify The Depot Company from and against any damages, costs and expenses growing out of any claim for damages, injuries or otherwise, to persons or property * * * by the fault or neglect of the officers, agents or employes of The Depot Company, while acting for, or in furtherance of the business of such Railway Company, or while acting as the mutual servant of The Depot Company, and such Railway Company," etc.

The appellant denies the applicability of that section and contends the depot company's right of reimbursement is governed by this provision of section 9 of the contract providing for the different payments the railway companies were to make to the depot company for the facilities and services furnished. These are made up of five items for that many purposes. The one claimed applicable by appellant in this instance reads:

"The payment of current expenses of keeping up, maintaining, repairing, warming, lighting, managing and operating said passenger depot, grounds, tracks and railways, and the rolling stock, equipment, appliances, appendages and appurtenances thereof, all taxes, assessments and rentals, if any, which The Depot Company may be obliged to pay, and all such other expenses and liabilities as may be incurred in the preservation and management of said property and the business thereof."

The particular clause relied upon by appellant is the last one quoted, the contention being that the liability the depot company incurred and paid to Mrs. Solliday arose in the "management of said property and the business thereof," and should be shouldered by all the railway companies in the ratio provided by the contract.

It may be assumed that the parties to this contract or operating agreement intended reimbursement to the depot company for every outlay or expense in the conduct of its business regardless of how it arose. The parts of the two sections quoted evidently indicate a purpose to impose reimbursement for certain of such outlays upon

the individual railway company which could be identified therewith to the exclusion of the others, and the balance upon all the companies to the operating agreement pro rata as therein provided. Do the facts here disclosed single out Mrs. Solliday as being more connected with appellant than any of the other railways? This is the first question.

The arbitrator rightly concluded that Mrs. Solliday, at the time of her fall, had not the status of a passenger of appellant. Barnett v. M. & St. L. R. Co. 123 Minn. 153, 143 N. W. 263, 48 L.R.A.(N.S.) 262. But he considered her an invitee of appellant, since it was in furtherance of its business to check her dog as baggage over its road that she made use of the station stairway. The care required of a railway company for the safety of a passenger differs only in degree from that required toward its invitee, who is more favored than a mere licensee. Powell v. Great Lakes Tr. Corp. 152 Minn. 90, 188 N. W. 61. Mrs. Solliday stood in a different relation to appellant than to any of the other railway companies which were parties to the agreement. She came to the station and descended the stairway to do business with appellant, and with no other company.

The relation of the respondent to the railways which entered the agreement for a union station has been the subject of consideration in several cases. Ahlbeck v. St. P. M. & M. Ry. Co. 39 Minn. 424, 40 N. W. 364, 12 A. S. R. 661; State v. St. Paul Union Depot Co. 42 Minn. 142, 43 N. W. 840, 6 L. R. A. 234; St. Paul Union Depot Co. v. M. & N. W. R. Co. 47 Minn. 154, 49 N. W. 646, 13 L. R. A. 415; Floody v. G. N. Ry. Co. 102 Minn. 81, 112 N. W. 875, 1081, 13 L.R.A.(N.S.) 1196; Floody v. C. St. P. M. & O. Ry. Co. 109 Minn. 228, 123 N. W. 815, 134 A. S. R. 771, 18 Ann. Cas. 274. The depot company is in a sense the mere agent of each railway company which is a party to the agreement. The depot company was brought into being by the railways, and all its stock is owned by them. It derives no profit. It is to be reimbursed for every expense and outlay made. And to provide for this reimbursement this operating agreement was entered.

As we view section 8, first quoted, its purpose was to place the duty of reimbursement for all expenses and outlays which might grow out of the depot company's dealings with the patrons, passengers and invitees of each particular railway company upon that company alone. And as to such dealings it matters not whether the expense or outlay arose from the negligence of the servant who directly came in contact with the patron and caused him damage or from negligence of some officer, agent or servant in care of some facility in the station such as steps or stairways or their proper lighting. To the patron of a particular railway, under this provision of the contract, every servant under the control of the depot company, as well as the station itself, its equipment and facilities, are to be regarded as belonging to and controlled by that particular railway company. This paragraph seems particularly directed to outlays on account of damages sustained by the patrons of the railway companies through negligence of their agent, the depot company.

The part of section 9 above quoted, on the other hand, provides reimbursement for outlays and expenses attending the ordinary operation and maintenance of the station with its servants and facilities of every kind. It necessarily has to include all outlays not susceptible of reimbursement from any one company under section 8. As examples, we might name injuries to employes of the depot company, to persons frequenting counters to buy merchandise, to patronize bootblack stands, lunch counters and dining rooms in the station, or to those coming to the station to seek information in respect to transportation and who at the time of injury could be classified neither as passengers nor invitees of any particular railroad governed by the agreement. Outlays for damages to persons coming under the above description are to be borne by all the railroads bound by the agreement in the proportion stipulated. But as to disbursements to those arising from injuries or damages to person or property who when the injury or damage occurred could be classed as the patrons of any one railroad party to the agreement, that railroad alone is charged with reimburse-

ment to the depot company. This was the construction the arbitrator placed on the agreement, and we think that is the one intended by the parties thereto.

Appellant contends that the quoted part of section 8 related only to damages paid by the depot company to persons whose damage or injury was received when passengers of a particular railroad and proximately through the negligence of some servant of the depot company who was therein acting for such railroad; and that as to disbursements for damages or injuries to passengers of any of the railroads under the agreement through the improper condition in which any part of the station or its equipment is left through the negligence of servants or employes of the depot company reimbursement should be made by all the railroads, for it was the undertaking of the depot company to maintain the same in proper condition for the benefit of all. We think this too narrow construction of section 8. Suppose an elevator fell through the negligent act of the operator taking down passengers to board appellant's waiting train. If we understand appellant rightly, it then concedes that the damages paid by respondent for injuries received by such passengers should be repaid by appellant alone; but if the elevator fell because another servant had negligently made faulty repairs reimbursement for the damages paid should be made by all the railroads. It does appeal to us that a construction which in the one case saddles the reimbursement upon appellant alone should likewise do it in the other. Because it may appear to one not acquainted with the practical workings of this agreement under which the union station is maintained and operated, that more nearly uniform and equal justice might have resulted had the contract provided for a ratable reimbursement to the depot company for every outlay it makes or is forced to make in the conduct of the station without regard to whether it was caused by the negligence of this or that servant of appellant. But evidently the agreement was not so drawn.

As we see it, the intention and purpose was that as to every patron of a railroad, subscribing to its terms, the depot company

is the agent of such railroad alone in furnishing the station itself and all its equipment, including employes and servants, so that if any injury occurs to the person or property of such patron because of such agent's negligence for which it must pay damages reimbursement under this agreement falls upon that railroad alone whose patron was injured.

We see no force in the argument that all the railroads to this agreement were partners or joint owners and liable as such; for plainly, as to reimbursement, the agreement was to govern, and not the principles of law which otherwise would determine the rights of the parties.

The judgment is affirmed.

WILSON, C. J.
I dissent.

STONE, J. took no part.