## CHARLES R. WEGMAN v. GREAT NORTHERN RAILWAY COMPANY.[1]

June 23, 1933.

No. 29,400.

[1]Reported in 249 N. W. 422.

*Ernest E. Watson* and *Paul H. Heincke*, for appellant.
*Alexander Fosmark* and *W. E. Rowe*, for respondent.

**STONE, Justice.**

Suing for personal injuries, plaintiff had a verdict for $27,175. After its alternative motion for judgment notwithstanding the verdict or a new trial was denied, judgment was entered, and defendant appeals.

Under date of September 15, 1930, defendant contracted in writing with the Northwestern Bell Telephone Company for the use by the latter of that portion of the rails of defendant's interstate railway system between the stations of Halstad and Eldred, Minnesota, for a "motor car with trailer to be furnished by the telephone company for the transportation of its crews and supplies over" defendant's tracks. For such use of defendant's rails a stipulated per diem was reserved. Defendant contracted to "furnish a conductor-pilot" for the motor car. For his service the telephone company was to pay "as per schedule." The telephone company, its officers, agents and employes were obligated to "observe and obey all rules,

regulations and orders of the railroad and its proper officers applicable in exercise of the aforesaid license and permission." Further, it was expressly stipulated that the conductor-pilots of defendant "shall be regarded, for the purpose of this agreement, as employes of the telephone company," which agreed to indemnify the railroad from any and all damages accruing to it or any employes of its own crew for personal injuries or damage to property.

October 7, 1930, plaintiff, a conductor in the employ of defendant, was the pilot serving with the telephone crew. While the motor car and trailer were being moved to get out of the way of an approaching train they collided with a motor truck at a highway crossing, and plaintiff received the serious injuries for which he now seeks recovery.

The motor car was being driven at the time by one Latterall of the telephone crew. According to plaintiff's testimony, he warned Latterall of the approaching danger, but the warning was disregarded and the collision occurred notwithstanding.

■ Much argument has been devoted to the issue whether, at the decisive moment, plaintiff was engaged in interstate transportation (C. & E. I. R. Co. v. Industrial Comm. 284 U. S. 296, 52 S. Ct. 151, 76 L. ed. 304, overruling Erie R. Co. v. Collins, 253 U. S. 77, 40 S. Ct. 450, 64 L. ed. 790, and Erie R. Co. v. Szary, 253 U. S. 86, 40 S. Ct. 454, 64 L. ed. 794; see annotation, 77 A. L. R. 1374) or anything so closely connected therewith as to be a part thereof in such fashion that his employment at the moment brought him within the protection of the federal employers liability act (45 USCA, c. 2). The case was tried for plaintiff upon the theory that he was, and the issue submitted to the jury. The verdict is an affirmative finding thereon. We do not consider it worth while to discuss the problem, because if plaintiff were not engaged in interstate transportation at the moment, and so denied the protection of the federal act, he would, notwithstanding and automatically, become subject to and entitled to the benefit of the Minnesota employers liability act, 1 Mason Minn. St. 1927, §§ 4933-4940, under which the essentials of plaintiff's cause of action and of the claimed defenses,

and the measure of damage, would have been precisely the same as under the federal act. Thompson v. Byram, 179 Minn. 67, 228 N. W. 546.

■ We find no difficulty in holding that if there is any fact issue the jury was justified in deciding that plaintiff remained an employe of defendant. The facts of the case, both in and out of the contract, show that the main duty of the pilot, and in fact the only purpose of his use, was to protect the normal operation of defendant's railroad, both as to interstate and intrastate commerce, from interruption or accident by reason of the presence on the tracks of the telephone company's equipment. The latter had to be kept out of the way of trains, several passenger and freight trains normally passing over the tracks in question each day. Care had to be taken to prevent their collision with the telephone equipment and their delay by the latter's presence. Another purpose was, and it was the duty of the pilot, to see that no obstructions were left on or dangerously near the tracks. In such matters the pilot was not subordinate to or in any way under the control of the telephone company or any of its officers and employes. In that field he was in control of the operation and the equipment used therein. For the proper performance of this independent duty he was responsible to defendant and not to the telephone company. There probably was no actual control exercised over Mr. Wegman, but the right of control of his work as a railroad man remained in defendant; in fact it was his duty as much as though he were running a freight or passenger train to get and to obey (as he did) the orders of train masters, dispatchers, or any other of his superiors in defendant's employ.

It was competent for defendant and the telephone company, in respect to their respective obligations and liabilities one to the other, by contract to characterize the conductor-pilot as a servant of the telephone company. But such a stipulation therein could not alter the facts of operation under the contract, nor so change the status of plaintiff as to deprive him of the protection of either the federal or the state statute, whichever was applicable. To the

extent that the contract attempts that (if it does) it is void under either the federal (45 USCA, § 55) or state employers liability act (1 Mason Minn. St. 1927, § 4937).

■ The next question is whether, if at all, defendant can be charged with the negligence of Latterall, the member of the telephone company's crew whose negligence the jury has found, on sufficient evidence, was the cause of plaintiff's injury. ˉDoubtless Latterall was a servant of the telephone company. But that, under the circumstances, is no bar to charging defendant with his negligence. While the operation was ultimately in the interest of the telephone company, it was nevertheless a railroad operation, one of rail transportation, to the extent that the motor car and trailer were using the tracks of defendant. They were so using them at the time of injury, and their use resulted in the accident. From such a railroad operation and such results a railroad company cannot divorce itself by contract. The law imposes a duty which is nondelegable and an obligation which cannot be so escaped. That has been held in cases of outright and complete lease. N. C. R. Co. v. Zachary, 232 U. S. 248, 34 S. Ct. 305, 58 L. ed. 591, Ann. Cas. 1914C, 159. There the result was referable to a local rule of North Carolina. We have a similar rule. We do not now determine how far it goes, or whether it would include a lessor-carrier who, by lease, has transferred to a lessee the whole use of its tracks, the lessor retaining neither use nor right of use. But we do hold, and the local law (how general the rule may be is unimportant) is settled that where the operation out of which injury arises is under a mere license, and the use remains one of ordinary railroad operation, the owner and licensor remains liable to one of its employes injured through the negligence of an employe of the licensee. It is not necessary even to inquire whether the negligent employe was a servant of the railroad company. That aside, the law is that the latter is liable for his negligence. Schoen v. C. St. P. M. & O. Ry. Co. 112 Minn. 38, 127 N. W. 433, 45 L.R.A.(N.S.) 841. See also Floody v. G. N. Ry. Co. 102 Minn. 81, 112 N. W. 875, 1081, 13 L.R.A.(N.S.) 1196, and Campbell v. C. N. Ry. Co. 124 Minn. 245, 144 N. W. 772.

It may well be that the rule does not impose upon the owner "liabilities arising from contracts, or even the torts," of a lessee or licensee "if they are not made or committed in the discharge of and in connection with the public duty arising from an obligation springing from the chartered privileges or chartered powers" of the owner. C. B. & Q. R. Co. v. Weber, 219 Ill. 372, 387, 76 N. E. 489, 493, 4 L.R.A. (N.S.) 272. That is but a limitation of the general rule "thoroughly established that where an injury results from the negligent or unlawful operation of a railroad, whether by the owner or by another whom the owner authorizes or permits to use its tracks, both * * * are liable to respond in damages to the party injured." Armstrong v. C. & W. I. R. Co. 350 Ill. 426, 431, 183 N. E. 478, 480. Here, as already stressed, the operation which was the occasion of injury was a railroad operation. If Latterall had been at the moment a locomotive engineer instead of the chauffeur of a rail-going motor truck, no question would have been made of the application of the general rule. But obviously the difference in function and motive power between locomotive and motor truck is of no consequence as long as the source of injury remains a railroad operation.

There is argument that plaintiff assumed the risk and that his own negligence, particularly his alleged violation of certain rules of defendant, was the proximate cause of the accident. We cannot so hold as matter of law. The argument goes only to issues of fact, upon which the verdict is decisive.

The judgment appealed from is affirmed.

*LORING, Justice,* took no part.